O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KEARNEY, NANCY KEARNEY, CHARLES MOORE, and SHARI MOORE,<br><br>Plaintiffs,<br><br>vs.<br><br>HYUNDAI MOTOR AMERICA,<br><br>Defendant. | CASE NO. SACV 09-1298-JST (MLGx)<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS (Doc. 74), (2) GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND ORDER DIRECTING NOTICE TO THE CLASS (Doc. 73), AND (3) SETTING A FAIRNESS HEARING FOR FRIDAY, JUNE 7, 2013, AT 2:30 P.M.** |

## I.  INTRODUCTION

Plaintiffs Christopher Kearney, Nancy Kearney, Charles Moore, and Shari Moore ("Plaintiffs") filed their Second Amended Complaint—the operative complaint—on July 15, 2010, asserting claims for violation of California's Consumers Legal Remedies Act (CLRA), California Civil Code §§ 1750, *et seq.*; violation of California's Unfair Competition Law (UCL), California Business & Professions Code §§ 17200, *et seq.*; breach of express warranty, California Commercial Code § 2313; and breach of implied warranty of merchantability, California Commercial Code § 2314.  (Second Am. Compl. ("SAC"), Doc. 30.)  On August 17, 2012, Plaintiff filed a Motion for Certification of a Settlement Class ("Certification Motion").  (Certification Mot. ("Cert. Mot."), Doc. 74.)  Defendant Hyundai Motor America ("Defendant" or "Hyundai") does not oppose the motion, subject to the Court's final approval of a proposed settlement.  (*See* Doc. 76.)

Also before the Court is a Joint Motion for Preliminary Approval of Class Settlement and Order Directing Notice to the Class ("Settlement Motion").  (Settlement Mot. ("Settle Mot."), Doc. 73.)  The Certification Motion asks the Court to conditionally certify the settlement class, while the Settlement Motion asks the Court to preliminarily approve the proposed settlement ("Settlement Agreement") and approve the form and method of class notice, including the setting of relevant dates.  Having considered the papers and the arguments of counsel at the hearing, the Court GRANTS Plaintiffs' Certification Motion, **GRANTS** Preliminary Approval of the Class Settlement, and sets a fairness hearing for **June 7, 2013, at 2:30 p.m.**

## II. BACKGROUND

This case concerns an alleged design defect in the Occupant Classification Systems ("OCS") of 2006-2009 model year Hyundai vehicles.  (*See* SAC ¶ 1.)  Hyundai's OCS is part of the advanced air bag system of its vehicles.  (*Id.* ¶ 19.)  It is an automatic suppression feature that turns off a vehicle's front passenger seat air bag system when it determines that the front passenger seat is occupied by a child-sized occupant, a child seat,

or is unoccupied.  Thus, if the OCS determines that a person of adult size does not occupy the front passenger seat, it turns off the passenger-side air bag and illuminates the "PASSENGER AIR BAG OFF" light, which informs passengers that the air bag will not deploy.  (*Id.*)  Plaintiffs allege that Hyundai's OCS does not consistently recognize persons of small-stature-adult-size, (*id.* ¶ 23), and that the OCS design causes the passenger-side air bag not to deploy in the event of an accident when such persons occupy the front passenger seat.  (*Id.* ¶¶ 23- 24.)

The vehicle models at issue in this case are covered by the same express warranty from Hyundai, which generally applies to repair or replacement of a component that is found to be defective in material or workmanship under normal use and maintenance. (*Id.* ¶¶ 128, 135.)  The express warranty extends to 60 months from the date of purchase or 60,000 miles, whichever occurs first.  (*Id.*)  Owners of various 2006-2009 model-year Hyundai vehicles allegedly complained on Internet forums and to the National Highway Traffic Safety Administration ("NHTSA") that the OCS did not correctly sense the presence of persons of small-stature-adult-size in the front passenger seat.  (*Id.* ¶¶ 27-55.)

On April 1, 2008, Hyundai notified NHTSA that it was initiating voluntary recalls of Hyundai Sonatas model years 2006 through 2008 produced from March 1, 2005, to January 11, 2008 (the "Recall Campaign").  (*Id.* ¶ 57.)  Pursuant to the recall, dealers were to remove the passenger seat cushion and send it to an evaluation and repair facility, which would repair or reprogram the seat cushion as necessary.  (*Id.* ¶ 58.)  On May 30, 2008, Hyundai sent a Technical Service Bulletin ("TSB") to all dealers regarding the air bag reprogramming.  (*Id.* ¶ 59.)  Initially, the reprogramming was to be performed only after verification that the OCS was not working properly, but in November 2008, Hyundai sent a recall notice to all Sonata owners stating that the OCS could be reprogrammed at the customer's request.  (*Id.* ¶¶ 59-61.)  Plaintiffs alleged that the repair associated with the recall did not completely address the OCS issues.  (*Id.* ¶¶ 63-71.)  During settlement negotiations, the parties executed a term sheet in which Hyundai agreed to expand the recall to include the Santa Fe vehicle.  (Settle Mot. at 6.)

Plaintiffs filed the putative class action complaint against Hyundai and Hyundai Motor Company—who is not a party in the operative complaint—on November 6, 2009. After a round of motions to dismiss, Plaintiffs ultimately filed their operative complaint, the SAC, on July 15, 2010, in which they reasserted CLRA, UCL, and breach of express warranty claims, and further asserted breach of the implied warranty of merchantability and revocation of acceptance claims. Hyundai moved to dismiss the SAC in its entirety. In its December 17, 2010 Order, the Court granted in part and denied in part the motion. (Order, Doc. 46.) The Court dismissed Plaintiffs' revocation-of-acceptance claim and the breach of express warranty claim insofar as it was based on Hyundai's Owner's Manuals, "ebrochures," Air Bag Safety Booklet, window stickers, and advertising. Otherwise, the Court denied the motion to dismiss as to the other claims. (*Id.* at 14; 18.)

Thereafter, Hyundai filed its Answer to the SAC, and the parties engaged in discovery. The parties represent in their Settlement Motion that discovery materials showed that the incidence of complaints concerning the operation of the OCS was very low generally, as measured by complaints to NHTSA in the form of Vehicle Owners' Questionnaires. On August 15, 2012, the parties executed a class-action settlement agreement ("Settlement Agreement"). (Settle Mot. Ex. 1 ("Settlement Agreement"), Doc. 73-2.)

The parties' Settlement Agreement proposes certification of the following nationwide class:

> All Persons residing in one of the fifty states or the District of Columbia who are currently registered as the owner of (1) a Model Year 2006-2008 Sonata vehicle; (2) a Model Year 2007-2009 Santa Fe vehicle produced between April 19, 2006 through July 7, 2008; or (3) a Model Year 2006-2009 Azera vehicle, except that the following are excluded: (i) government entities; (ii) federal court judges assigned to this case and their spouses and anyone within three degrees of consanguinity from those judges and their spouses; and (iii) Persons who have previously executed a release of HMA [Hyundai], which release includes a claim of defective design of the Occupant Classification Systems at issue in this case.

1  (Settlement Agreement ¶ 2.1.)

2       Under the proposed settlement, Hyundai will mail each class member a pamphlet

3  describing the purpose of the OCS and its operation.  The pamphlet is purportedly intended

4  to help class members "optimize their experience with the OCS in their vehicles."  The

5  pamphlet will advise them: (1) with respect to correct seating positions; and (2) that the

6  OCS is designed to favor protecting children.  (*Id.* ¶ 4.1.3.)  Owners of Sonata Vehicles

7  upon which the OCS recalibration has not already been performed will also receive a letter

8  advising them of the available recalibration of the OCS. (*Id.* ¶ 3.1.1.1.)

9       As for the Santa Fe, pursuant to a term sheet executed by the Parties, Hyundai

10  agreed to launch a service action in which it would provide notice to each owner of a Santa

11  Fe Vehicle to bring his or her vehicle to an authorized dealer for incorporation of the

12  updated Santa Fe Vehicle OCS calibration software.  (*Id.* ¶ 3.1.2.1.)  After the execution of

13  the term sheet, Hyundai voluntarily decided to make this OCS recalibration available to

14  each owner of a Santa Fe Vehicle through a recall rather than a service action.  (Pursuant

15  to 49 C.F.R. § 573.6(b), Hyundai was required to notify NHTSA of its decision to conduct

16  the campaign as a recall within five days of that determination.)  Pursuant to this recall,

17  Hyundai will provide notice to each Santa Fe Vehicle owner by first-class mail to bring his

18  or her vehicle to an authorized dealer for incorporation of the updated Santa Fe Vehicle

19  OCS calibration.  (*Id.* ¶ 3.1.2.1.)

20       Under the proposed settlement, Hyundai will mail to owners of Sonata Vehicles that

21  were already incorporated in the Recall Campaign's recalibration a sticker designed to be

22  affixed to the inside of the glove box door advising future owners that the OCS has been

23  recalibrated.  (*Id.* ¶ 3.1.1.2.)  Hyundai will also update the applicable TSB to reflect that

24  Hyundai dealers performing the OCS recalibration on Sonata Vehicles should apply a

25  sticker to the inside of the glove box door (unless the owner objects, in which case it

26  should be applied to the Owner's Manual) advising future owners that the OCS has been

27  recalibrated.  (*Id.* ¶ 3.1.1.3.)

28

The proposed settlement provides additional remedies for owners of certain Class Vehicles who remain unsatisfied with the OCS's performance.  For owners of Sonata Vehicles that have received the OCS recalibration, Santa Fe Vehicles that have received the updated OCS calibration, and all Azera Vehicles ("Eligible Vehicles") who remain unsatisfied with the OCS's performance, Hyundai will have 90 days to endeavor in good faith to resolve the concerns of those owners ("Eligible Vehicle Owners"), provided that they contact Hyundai's Customer Connect Center within the later of: (a) 30 days after receiving the updated calibration or recalibration; or (b) 30 days following final approval of the class-action settlement.  (*Id.* ¶¶ 4.1.1–4.1.3.)  Hyundai's efforts are to include educating the Eligible Vehicle Owner with respect to correct seating positions, the OCS's compliance with federal safety standards, and the OCS's design.  (*Id.* ¶ 4.1.3.)  If the Eligible Vehicle Owner's concern remains unresolved and Hyundai believes that the Eligible Vehicle Owner has produced an adult passenger who (1) has previously been a passenger in the Eligible Vehicle; (2) weighs at least 108 pounds; and (3) is at least 16 years old, and the OCS judges that the passenger does not require the activation of the air bag system consistent with the design of the OCS (indicated by the extinguishment of the "Passenger Air Bag Off" light) after at least one of three "key on" cycles (the "Eligibility Criteria"),  Hyundai will offer to refund the purchase price of the Eligible Vehicle. Hyundai may also offer to exchange, and at the Eligible Vehicle Owner's option will exchange, the Eligible Vehicle for another Hyundai model (the "Refund/Exchange Option"), subject to: (a) a mileage offset according to the Eligible Vehicle's mileage on the date of the offer; (b) a 120,000-mile vehicle lifespan; and (c) vehicle damage other than ordinary wear (the "Refund/Exchange Conditions").  (*See id.* ¶ 4.1.4.)  This formula is based on California's Lemon Law, California Civil Code § 1793.2.

Under the proposed settlement, if Hyundai is unwilling to give the Eligible Vehicle Owner the Refund/Exchange Option, and the concerns of the Eligible Vehicle Owner remain unresolved, the Eligible Vehicle Owner is entitled to initiate a proceeding before the Better Business Bureau or a similar entity by calling a toll-free number within thirty

1  days of the expiration of the ninety-day period Hyundai has to resolve his or her concerns.

2  (*Id.* ¶ 5.1.)  Hyundai is obligated to pay all fees imposed by the entity conducting the

3  arbitration.  (*Id.* ¶ 5.4.)  Pursuant to the proposed settlement, if the arbitrator finds that an

4  Eligible Vehicle meets the Eligibility Criteria, the Eligible Vehicle Owner is entitled to the

5  Refund/Exchange Option, subject to the Refund/Exchange Conditions (except that the

6  mileage offset is calculated based on the date of the arbitration).  (*Id.* ¶ 5.2.)

7       Under the Settlement Agreement, class members agree to release Hyundai from all

8  claims that arise from or relate to this lawsuit.  (*Id.* ¶ 10.1.)  The release expressly excludes

9  claims for personal injury, damage to property other than the class member's vehicle, or

10 any and all claims pertaining to anything other than the class member's vehicle.  (*Id.*)  The

11 Settlement Agreement proposes that Notice of this proposed settlement be disseminated to

12 the Settlement Class by first-class mail.  The Notice will be mailed to every class member

13 whose current address is reasonably ascertained from an available R.L. Polk & Company

14 database.  (*Id.* ¶ 8.1.)  Mailing will be completed at the sole expense of Hyundai.  (*Id.*)

15      The Settlement Agreement also provides that Hyundai will pay Plaintiffs'

16 reasonable attorneys' fees in an amount to be separately negotiated and approved by the

17 Court.  (*See id.* ¶¶ 9.1-9.5.)  The parties assert that they did not discuss attorneys' fees

18 prior to or in connection with the execution of the Settlement Agreement. (Settle Mot. at 9-

19 10.)  Instead, they engaged in mediation on August 28, 2012, before the Honorable

20 Stephen J. Sundvold (Ret.).  (Notice of Parties' Agreement on Attorneys' Fees and

21 Incentive Awards ("Fees Notice") at 2, Doc. 75.)  At the mediation, the parties agreed that

22 Plaintiffs' counsel will move this Court for an award of: (1) reasonable attorneys' fees and

23 expenses not to exceed a total sum of $993,000 (reflecting a multiplier of 1.0); (2)

24 incentive payments totaling $10,000 for the four named Plaintiffs (i.e., $2,500 for each of

25 the four named Plaintiffs).  (*Id.*)  Hyundai agreed to not oppose this award of attorneys'

26 fees, expenses, and incentive payments.  (*Id.*)  In their Fees Notice, the parties also advised

27 the Court that they would be filing an updated proposed Notice to Class, which would

28 include the amounts of fees, expenses, and incentive payments, as well as updated

7

information and the settlement website.  (*Id.*)  The parties have now filed the updated proposed Notice to Class.  (Joint Notice of Proposed Am. Class Notice, Doc. 78.)

## III.   CONDITIONAL CERTIFICATION OF THE CLASS

### A. <u>Legal Standard</u>

Plaintiffs request conditional certification of the class pursuant to Fed. R. Civ. P. 23. When conditionally certifying a class for settlement purpose, the court "must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (internal quotation marks omitted).

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2550 (2011).  "Under Rule 23(a), the party seeking certification must demonstrate, first, that":

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 2548 (citing Fed. R. Civ. P. 23(a)).  "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.*  Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would
substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that
apply generally to the class, so that final injunctive relief or corresponding
declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members, and that a class action is superior to other available methods for
fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  "Rule 23 does not set forth a mere pleading standard," thus "[a]
party seeking class certification must affirmatively demonstrate his compliance with the
Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous
parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.  This requires a
district court to conduct a "rigorous analysis" that frequently "will entail some overlap
with the merits of the plaintiff's underlying claim." *Id.*

### B.  Requirements Under Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is
impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a general rule, . . . classes of 40 or more are
numerous enough."  *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal.
2012); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir.
1964) ("'[i]mpracticability' does not mean 'impossibility,' but only the difficulty or
inconvenience of joining all members of the class.") (internal quotation marks and citation
omitted).  Numerosity is plainly met as "hundreds of thousands" of vehicles covered by the
proposed class were sold during the period covered by the class.  (Cert. Mot. at 3.)

#### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."
Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class
members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel.
Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "This does not mean merely that they

have all suffered a violation of the same provision of law," but instead that their claim(s) "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Although "for purposes of Rule 23(a)(2) even a single common question will do," *id.* at 2556 (internal citation, quotation marks, and brackets omitted), "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (emphasis included).

Plaintiff points to several common questions amenable to common proof in this litigation:

> (1) whether the OCS is defective because it fails to detect the presence of persons of small-stature-adult size; (2) whether Hyundai misrepresented the OCS's ability to determine the presence of persons of small-stature-adult size; (3) whether Defendant concealed the defective OCS design; (4) whether Defendant breached express and implied warranties made to Plaintiffs and the Settlement Class by selling Hyundais with defective OCS in the advanced air bag systems; and (5) whether Defendant violated California law, including the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and/or California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

(Cert. Mot. at 4.)  While Plaintiffs' analysis of commonality is Spartan, commonality is plainly met here because the focus of the litigation is the OCS—a system that is uniform across the vehicles.  (*See* SAC ¶ 6.)  Thus, the determination of the OCS's defects will generate a common answer applicable to all class members.  Moreover, Hyundai allegedly failed to disclose material information about OCS across the class, including, *inter alia*, that OCS would not function properly for persons of small-stature-adult size, and (2) that OCS would prevent air bags from deploying when persons of small-stature-adult size sit in the front passenger seat.  (*Id.* ¶ 108.)

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted). "Typicality requires that the named plaintiffs be members of the class they represent." *Id.* at 613 (citing *Falcon*, 457 U.S. at 156). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other. *Dukes*, 131 S. Ct. at 2551 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Plaintiffs' claims are reasonably coextensive (if not identical) with those of the class members, as each Plaintiff's claims arise from the same alleged conduct of Hyundai. Each Plaintiff owns a vehicle that (1) is within the Settlement Class definition and (2) has an OCS that has had problems. (Cert. Mot. at 6.) As a result, Plaintiffs have shown that they are members of the identified class and suffered the same or similar injuries as those of the class. Finally, their claims are based on the same legal theories: violation of the UCL, CLRA, and breach of express and implied warranties. (*Id.*) Thus, typicality is met.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 131 S. Ct. 2541. Plaintiffs do not appear to have any conflicts of interest with the class members, and they have been involved in this litigation since its

1   inception.  (*See* Kearney Decl. ¶ 9, Doc. 82; Moore Decl. ¶ 6, Doc. 83.)  Thus, the Court

2   concludes that Plaintiffs will adequately represent the class.

3        As to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work

4   counsel has done in identifying or investigating potential claims in the action; (ii)

5   counsel's experience in handling class actions, other complex litigation, and the types of

6   claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

7   resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

8   Based on the Plaintiffs' counsel's substantial experience in class-action litigation and their

9   work in this matter so far, the Court concludes that the adequacy requirements under Rule

10  23(g) have been met.  (*See* Carey Decl. ¶¶ 2-4, Doc. 79-1; Berman Decl., Doc. 88.)  As a

11  result, the Court will appoint Robert B. Carey and Steve W. Berman, of Hagens Berman

12  Sobol Shapiro LLP, as class counsel in this matter.[1]

13       **C.  Requirements Under Rule 23(b)**

14       In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy

15  one of the three elements of Rule 23(b).  Plaintiffs seeks certification under Rule 23(b)(3),

16  alleging that common questions predominate over any individual issues that may exist in

17  this case.  (Cert. Mot. at 8.)  Under Rule 23(b)(3), a class action may be maintained if: "[1]

18  the court finds that the questions of law or fact common to class members *predominate*

19  over any questions affecting only individual members, and [2] that a class action is

20  *superior* to other available methods for fairly and efficiently adjudicating the controversy."

21  Fed. R. Civ. R. 23(b)(3) (emphasis added).  The Court may consider:

22       (A) the class members' interests in individually controlling the prosecution or
23       defense of separate actions; (B) the extent and nature of any litigation
     concerning the controversy already begun by or against class members; (C) the
24       desirability or undesirability of concentrating the litigation of the claims in the
     particular forum; and (D) the likely difficulties in managing a class action.

25

26  _____

27       [1] At the hearing on the instant Motions, the Court informed Plaintiffs' counsel that the Court
     appoints attorneys, not law firms, to represent classes.

28

1   *Id.*  Plaintiff's claims satisfy both the predominance and superiority requirements.

2   ### 1. Predominance

3   As to the predominance factor, the Supreme Court has explained that it "tests

4   whether proposed classes are sufficiently cohesive to warrant adjudication by

5   representation." *Amchem*, 521 U.S. at 623.  "When common questions present a

6   significant aspect of the case and they can be resolved for all members of the class in a

7   single adjudication, there is clear justification for handling the dispute on a representative

8   rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan

9   Wright, et al., FEDERAL PRACTICE & PROCEDURE § 1778 (2d ed. 1986)).   "Considering

10  whether 'questions of law or fact common to class members predominate' begins, of

11  course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v.*

12  *Halliburton Co.*, --- U.S. ---, 131 S. Ct. 2179, 2184 (2011).

13  The threshold predominance question in this case is whether California law can be

14  applied to an entire nationwide class.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

15  589-94 (9th Cir. 2012) (analyzing choice of law issues in predominance inquiry).  The

16  parties' initial submissions are silent on this issue, but after the hearing on these Motions

17  they provided additional evidence.

18  *Mazza* sets forth the framework for applying California law to a nationwide class

19  action consistent with (1) the Constitution and (2) California's choice of law rules.  The

20  class action proponent bears the initial burden of demonstrating that California has

21  "significant contact or significant aggregation of contacts" to the claims of each class

22  member.  *Id.* at 589 (internal citations omitted).  Plaintiffs have carried their initial burden.

23  They have demonstrated that Hyundai is a California corporation headquartered in

24  Fountain Valley, California.  (Carey Decl. II ¶ 14, Doc. 81.)  Hyundai has a "significant

25  number" of its U.S. support functions in this state, where it establishes policies and

26  procedures it uses, and tests the products it sells throughout the United States.  (*Id.* ¶ 15.)

27  Hyundai has a design center in this state. (*Id.*)  Hyundai "handles all marketing, sales,

28  product development, and administrative services for Hyundai in the USA."  (*Id.* ¶ 16.)

Hyundai sells a "significant amount" of its products in California and has approximately 62 dealers in the state. (*Id.* ¶ 19.) Finally, Hyundai—pursuant to its Sonata recall—had all dealers remove the passenger seat cushions and send them to an evaluation and repair facility in California. (*Id.*) Indeed, this is where Plaintiff Christopher Kearney's seat was sent for evaluation. (*Id.*) Thus, California has "significant contact or significant aggregation of contacts to the claims of each class member." *Mazza*, 666 F.3d at 589.

Having carried their burden, "the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id.* Defendant does not make any showing that a different jurisdiction's law should apply. Accordingly, California law will apply to the Class' claims.

Predominance is met for the CLRA claim for material omissions. While "the CLRA requires each class member to have an actual injury caused by the unlawful practice, causation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns*, 655 F.3d at 1022 (internal citation, quotation marks, and brackets omitted). "This rule applies to cases regarding omissions or 'failures to disclose' as well." *Id.*

Under California law, a misrepresentation or omission is material

> if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.

*Id.* (quoting *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010)).

"Where, as here, the alleged misrepresentations are primarily defendant's failure to disclose problems with the class vehicles, plaintiffs must show that defendant had a duty to disclose, which, again, may be proven through materiality. Materiality is determined from the perspective of the reasonable consumer." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (internal citation omitted).

The *Parkinson* court certified a CLRA class based on the identical questions Plaintiffs argue predominate in this case:

> (1) whether defendant was aware of the alleged defect; (2) whether defendant had a duty to disclose its knowledge; (3) whether defendant failed to do so; (4) whether the alleged failure to disclose would be material to a reasonable consumer; and (5) whether defendant's actions violated the CLRA.

*Id.* at 596.  As did the *Parkinson* court, the Court finds that these common questions will predominate over any individualized issues.

The same questions that will predominate in the CLRA inquiry will predominate in the UCL inquiry, as well.  First, while the class representatives will have to demonstrate reliance to prevail upon their UCL claim, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) ("*Tobacco II*").  Second, the absent class members will not have to demonstrate reliance because "relief under the UCL is available without individualized proof of deception, reliance and injury." *Stearns*, 655 F.3d at 1020 (quoting *Tobacco II*, 46 Cal. 4th at 320).  Therefore, predominance is met here because if materiality is demonstrated, reliance and causation will be presumed across the class. *See Parkinson*, 258 F.R.D. at 596.

Plaintiffs' next claim is for breach of an express warranty—in this case, Hyundai's 60-month, 60,000-mile warranty.  (*See* SAC ¶ 128; Cert. Mot. at 11.)  To prevail on a breach-of-express-warranty claim, a plaintiff "must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks and citation omitted).  "[U]nder California law, a defect that remains 'latent' during the useful life of the product and does not manifest in an actual malfunction will not support a cause of action for breach of express warranty." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 534 (C.D. Cal. 2012) (citing *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001)).

On the basis of that principle of California law, the *Keegan* court considered whether—to establish predominance—under California substantive law, a plaintiff seeking certification needed to demonstrate that a design defect is "substantially certain to result in malfunction during the useful life of the product," *id.* (quoting *Hicks*, 89 Cal. App. 4th at 918), or whether a plaintiff need only demonstrate "that all class vehicles have a common defect." *Id.* The *Keegan* court determined that a plaintiff need not establish at the certification stage that a design defect is substantially certain to manifest, concluding that a "merits inquiry will resolve that question in one stroke." *Id.* at 536. The Court agrees with the *Keegan* court's analysis. The Hyundai warranty at issue is allegedly uniform across the class. (*Id.* ¶ 128.) Thus, common questions will predominate in this inquiry.

Plaintiffs' final claim is for breach of implied warranty of merchantability, pursuant to California Commercial Code § 2314. (*Id.* ¶¶ 136-145.) "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law. It does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295-96 (1995) (internal quotation marks and citations omitted). As the *Keegan* court explained, the "court's [predominance] analysis regarding plaintiffs' express warranty claim dictates the outcome with respect to their breach of implied warranty claim, since cases such as *Hicks* have applied the 'substantial certainty' requirement to both express and implied warranty claims." *Keegan*, 284 F.R.D. at 537 (citing *Hicks*, 89 Cal. App. 4th at 917-23). Thus, the Court finds that Plaintiffs have established predominance as to all of their claims.

### 2. Superiority

The Court also finds that a class action would be a superior method of adjudicating Plaintiffs' claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each

member of the class pursuing a claim individually would run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). Further, litigation costs would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1198 n.2 (9th Cir. 2001) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. *See Fed. R. Civ. P.* 23(b)(3)(A), (C). This particular forum is desirable because Hyundai is located in California. *See Fed. R. Civ. P.* 23(b)(3)(C). The Court is not aware of any litigation concerning the controversy that has already begun by or against class members. *See Fed. R. Civ. P.* 23(b)(3)(B).[2]

## IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing. Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

To determine whether a settlement agreement is fair, adequate, and reasonable, "a district court must [ultimately] consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the

---

[2] Trial manageability is not a factor in determining whether to certify a settlement class. *Amchem Prods.*, 521 U.S. at 620.

1  risk of maintaining class action status throughout the trial; the amount offered in

2  settlement; the extent of discovery completed, and the stage of the proceedings; the

3  experience and views of counsel; the presence of a governmental participant;[3] and the

4  reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959

5  (internal citation and quotation marks omitted).  "The relative degree of importance to be

6  attached to any particular factor will depend upon and be dictated by the nature of the

7  claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

8  presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

9  615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual

10  component parts, that must be examined for overall fairness, and the settlement must stand

11  or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026).

12       In addition to these factors, where "a settlement agreement is negotiated *prior* to

13  formal class certification," the Court must also satisfy itself that "the settlement is not the

14  product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab.*

15  *Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal citations and quotations omitted).

16  Accordingly, the Court must look for explicit collusion and "more subtle signs that class

17  counsel have allowed pursuit of their own self-interests and that of certain class members

18  to infect the negotiations." *Id.* at 947.  Such signs include (1) "when counsel receive a

19  disproportionate distribution of the settlement . . . ," (2) "when the parties negotiate a

20  'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart

21  from class funds . . . ," and (3) "when the parties arrange for fees not awarded to revert to

22  defendants rather than be added to the class fund." *Id.*

23       At this preliminary stage and because class members will receive an opportunity to

24  be heard on the settlement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI,*

25  *Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of

26

27       [3] This factor does not apply to the case.

28

1   the settlement terms to the proposed class are appropriate where "[1] the proposed

2   settlement appears to be the product of serious, informed, non-collusive negotiations, [2]

3   has no obvious deficiencies, [3] does not improperly grant preferential treatment to class

4   representatives or segments of the class, and [4] falls with the range of *possible* approval

5   . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

6   (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans*

7   *Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2009) ("To determine whether preliminary

8   approval is appropriate, the settlement need only be *potentially* fair, as the Court will make

9   a final determination of its adequacy at the hearing on the Final Approval, after such time

10  as any party has had a chance to object and/or opt out.") (emphasis in original).

11          In any event, the Court evaluates all applicable factors below and finds that the

12  Settlement Agreement should be preliminarily approved.

13          **A.  <u>Arms-length Negotiations</u>**

14           In this case, Plaintiffs' counsel represents that the parties engaged in extensive,

15  months-long negotiations, and that those negotiations were at arms-length.  (Settle Mot.

16  Ex. 2, Carey Decl., ¶¶ 2-3, 7, 9, Doc. 73-3; Settle Mot. at 16.)  Moreover, the parties went

17  through two rounds of full briefing on motions to dismiss.  (Settle Mot. at 16.)  In other

18  words, this appears to have been a vigorously litigated case.  The Fees Notice, (Doc. 75 at

19  2), does reveal the presence of a "clear sailing" agreement, which the Ninth Circuit warned

20  was a "subtle sign" of collusion.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

21  at 946; *see also* William D. Henderson, *Clear Sailing Agreements: A Special Form of*

22  *Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813 (2003).  However, the "clear

23  sailing" arrangement is mitigated by the fact that the parties negotiated and executed the

24  Settlement Agreement *before* the mediation on attorneys' fees, expenses, and incentive

25  payments.  Thus, the "pot" was established before the parties agreed on a proposed amount

26  in fees.  Moreover, the mediation was conducted by a former judicial officer who works

27  for a well-regarded alternative dispute resolution services provider.  At this point, the

28

1  Court is sufficiently satisfied for the purpose of preliminary approval that the Settlement

2  Agreement is the result of arms-length, noncollusive, and informed negotiations.

3          **B.  Strength of Plaintiffs' Case and the Amount Offered in Settlement**

4          The crux of Plaintiffs' claims is that Hyundai knew about and failed to disclose

5  certain design defects in OCS.  (Settle Mot. at 12.)  While Plaintiffs assert they would

6  prevail at trial and upon any necessary appeal, Defendant "has raised and would continue

7  to raise challenges to the legal and factual basis for such claims."  (*Id.*)  The proposed

8  settlement expands upon the recall campaign Hyundai started by extending it to additional

9  vehicle owners and providing additional remedies (if needed) and informational materials.

10 Thus, at this point, the proposed settlement strikes a balance between Plaintiffs' claims and

11 Defendant's defenses.  The Court concludes that the parties' decision to reach a settlement

12 in this matter was reasonable.

13         The offered settlement appears fair and is keyed to repairing the alleged harm.  *Cf.*

14 *Hanlon*, 150 F.3d at 1027 ("The settlement presented to the district court obligates

15 Chrysler to make the minivans safe.  This fact alone sets this case apart from [other cases]

16 in which a settlement agreement was rejected in large measure because it did nothing to

17 remedy the safety problem with the vehicles.").  Class members will receive additional

18 materials informing them about the OCS (i.e., providing material information that Hyundai

19 allegedly omitted).  Class members will be entitled to have their OCS fixed via recall.  If

20 the recall does not fix the problem, and the class member so proves (at arbitration , if

21 needed), the class member will be entitled to a refund of the vehicle price (subject to a

22 reduction for wear and tear under California's Lemon Law), or a new Hyundai vehicle in

23 exchange.

24         As discussed above, the parties have notified the Court that Plaintiffs will move for

25 fees and expenses not to exceed $993,000.  Before final approval, the court will "scrutinize

26 closely the relationship between attorneys' fees and benefit to the class" and will not

27 "award[] unreasonably high fees simply because they are uncontested."  *In re Bluetooth*,

28 654 F.3d at 948 (internal quotation marks and citation omitted).  In Plaintiffs' motion for

attorneys' fees, they will need to make a sufficient showing as to attorneys' fees, litigation expenses, other related costs, and a service award by the submitted declarations, especially since not all fees and expenses have been incurred.  For example, as to attorneys' fees, Plaintiffs' counsel will need to submit evidence of the hours worked and billing rates. Moreover, Plaintiffs' counsel will need to introduce some evidence of the fees, etc., sought vis-à-vis the expected class award.  In the Ninth Circuit, the benchmark for fees is 25% of the common fund.  *See*, *e.g.*, *Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as the benchmark award for attorney fees.").  Plaintiffs' counsel will have to justify any upward departure from the Ninth Circuit's fees benchmark, if one is sought.

Finally, the amount of the settlement also appears fair, adequate, and reasonable in light of the claims released by the participating class members and those class members who fail to exclude themselves from the Settlement Agreement.  The proposed agreement will release class members' claims only as related to their Class Vehicles, and does not include damage for personal injury or to property other than the Class Vehicle. (Settlement Agreement, ¶ 10.1.)

### C.  Likely Expense and Duration of Further Litigation

Undoubtedly the expense incurred by Plaintiffs and the purported class will increase as the case progresses.  This action has ensued for over two years, and neither side has brought dispositive motions.  Thus, if settlement were not reached, Plaintiffs and potential class members would likely incur additional costs in conducting further discovery, defending or bringing dispositive motions, and, if applicable, preparing for and participating in trial.  (*See* Carey Decl. II ¶ 6; Settle Mot. at 13.)  The Court finds that this factor favors preliminary approval of the Settlement Agreement.

### D.  Extent of Discovery Completed

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.

*See Clesceri v. Beach City Investigations & Protective Servs, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011). Here, Plaintiff's counsel represents that the parties have engaged in formal and informal discovery during the two-year litigation, and that Plaintiffs' counsel has conducted "independent investigations." (Carey Decl. II ¶ 5.) Furthermore, Plaintiffs' counsel represents that during the extensive settlement negotiations, he "requested additional information from [Hyundai] about the extent of complaints concerning the OCS," and that each time he was "provided information on all matters about which [he] inquired." (*Id.* ¶ 10.) With the above in mind, the Court finds that the parties had sufficient information to make an informed decision about settlement.

The Court recognizes that settlement occurred before class certification or any other dispositive motions were filed with the Court. However, the parties have shown that they have spent significant time investigating this action to allow for an informed decision, but not so much time that the settlement amount will be unnecessarily depleted by extensive costs and fees. As a result, the Court finds that this factor favors preliminarily approving the Settlement Agreement.

**E.  Risk of Maintaining Class Certification**

The parties make passing reference to the risk of litigation, yet they do not provide the Court with any specific risks of maintaining class certification throughout the litigation. (*See, e.g.*, Carey Decl. II ¶ 6 ("While I believe that Plaintiffs have valid claims, I recognize that there is always an element of risk in any litigation.") Hence, the Court need not consider this factor for settlement purposes. *See In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval nor disapproval of

settlement where the court was "unaware of any specific difficulty in maintaining class-action status were [the] case to continue to trial").

### F. Experience and Views of Counsel

Plaintiffs' counsel have substantial experience serving as plaintiff's counsel in class actions, and they have fully endorsed the Settlement Agreement as fair, reasonable, and adequate. (Carey Decl. ¶¶ 2, 4, 7 ("I believe that settlement of this action is appropriate and *in the best interests of Hyundai vehicle owners*" (emphasis added)).) This factor weighs in favor of preliminarily approving the Settlement Agreement.

### G. Reaction of Class Members to Proposed Settlement

All of the named plaintiffs believe the settlement is fair and recommend approval. (Kearney Decl. ¶ 11; Moore Decl. ¶ 8.) As of yet, Plaintiffs have not provided evidence of class members' reaction to the proposed settlement. However, the Court recognizes that the lack of such evidence is not uncommon at the preliminary approval stage, and the parties represent that they "will provide further evidence of the reaction of the class members before the settlement fairness hearing." (Settle Mot. at 16.) Plaintiffs' counsel shall submit a sufficient number of declarations from class members discussing their reactions to the proposed settlement. Alternatively, a small number of objections at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

## V.   PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994).

1    The Settlement Agreement provides that notice will be mailed to every class

2    member "reasonably ascertainable from an available R.L. Polk database (or a similar

3    database)" at least 45 days prior to the last date for objections and exclusions.  (Settlement

4    Agreement, ¶ 8.1.)  The Supreme Court has found notice by mail to be sufficient if the

5    notice is "reasonably calculated . . . to apprise interested parties of the pendency of the

6    action and afford them an opportunity to present their objections."  *Mullane v. Cent.*

7    *Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  *Accord Sullivan v. Am. Express*

8    *Publ'g Corp.*, No. SACV 09-142-JST (ANx), 2011 WL 2600702, at *8 (C.D. Cal. June 30,

9    2011) (quoting *Mullane*).

10    Plaintiffs have provided the Court with a copy of the original proposed notice and

11    the amended proposed notice.  (Settlement Agreement, Ex. H; Joint Notice Am. Notice,

12    Ex. A, Doc. 78.)  Under Rule 23, the notice must include, in a manner that is

13    understandable to potential class members: "(i) the nature of the action; (ii) the definition

14    of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member

15    may enter an appearance through an attorney if the member so desires; (v) that the court

16    will exclude from the class any member who requests exclusion; (vi) the time and manner

17    for requesting exclusion; and (vii) the binding effect of a class judgment on members

18    under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The amended proposed notice includes

19    this necessary information.  (*See* Joint Notice Am. Notice, Ex. A.)

20    The Court also requires the Notice to be modified as follows:

21    (1) A final sentence should be added to the sixteenth numbered section on page 10

22        of the Notice, stating, "Class Counsel will file a Motion for Attorneys' Fees,

23        Litigation Costs and Expenses, and Class Representatives' Enhancement Award

24        no later than [insert date], 15 days before the date by which you must mail your

25        exclusion request, or object to the settlement's terms."  *See In re Mercury*

26        *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (holding that

27        district court must set a settlement schedule that provides the class an adequate

28

opportunity to review and prepare objections to class counsel's *completed* fee motion).

    (2) In numbered section 24 on page 12, the Notice should state that the Motion for Attorneys' Fees, Litigation Costs and Expenses, and Class Representatives' Incentive Award will be available for review as part of the Court's files in this matter at the Office of the Clerk of Court or via PACER.

The parties must provide the Court within **10 days** of this order an updated copy of the Notice and related forms reflecting the changes identified above.

Finally, the Court requires that the Motion for Final Approval of the Settlement and Motion for Attorneys' Fees, Litigation Costs and Expenses, and Class Representatives' Enhancement Award be filed with the Court no later than 15 days *before* the Notice response deadline.  In addition, the parties are required to file with the Court no later than 15 days *after* the expiration of the Notice response deadline a brief responding to any submitted objections and otherwise summarizing the class members' participation in the Settlement and the settlement administration to date.

In their papers for final approval of the settlement, the parties must include a declaration reflecting that they provided appropriate notice of the proposed settlement to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official.'" (quoting 28 U.S.C § 1715(b)).

## VI.  CONCLUSION

Accordingly, the Court:  (1) conditionally certifies the class, and appoints Christopher Kearney, Nancy Kearney, Charles Moore, and Shari Moore as settlement class representatives and Robert B. Carey and Steve W. Berman, Hagens Berman Sobol Shapiro

LLP, as settlement class counsel; (2) preliminarily approves the Settlement Agreement; and (3) approves the form and method of class notice with the modifications outlined in this order.

The Court sets a fairness hearing for **June 7, 2013, at 2:30 p.m.**, to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate to class members.

Defendant must cause individual notice to be mailed via first-class mail to all reasonably identifiable current owners of Class Vehicles on or before **March 15, 2013**. For purposes of identifying current address information for Class Vehicle owners, R.L. Polk & Company is hereby authorized to provide the names and most current addresses of Class Vehicle owners to Defendant or its designee.  Any governmental agency in possession of names or addresses of Class Vehicle owners is hereby authorized and directed to relate that information to R.L. Polk & Company for use solely in connection with providing notice to the Class.

Plaintiffs' counsel shall file all additional supporting documentation noted by the Court and brief(s) supporting final approval of the Settlement Agreement, an award of reasonable attorneys' fees and costs, and an award of a reasonable class representative incentive fee no later than **April 25, 2013**.

Class members must mail any letter (1) objecting to the proposed settlement, (2) electing to exclude themselves from the Class, or (3) stating their intention to appear at the Fairness Hearing on or before **May 10, 2013**.

 Plaintiffs' counsel shall file a brief in response to any objections by class members, which also summarizes the settlement administration to date, on or before **May 24, 2013**.

This preliminary approval order is also conditioned upon the parties providing the Court within **10 days** of this order an updated copy of the Notice and related forms reflecting the changes identified above.

1      The Court reserves the right to continue the date of the fairness hearing without

2  further notice to class members.  The Court retains jurisdiction to consider all further

3  applications arising out of or in connection with the Settlement Agreement.

4

5

6  DATED: December 17, 2012

7  _____

8        JOSEPHINE STATON TUCKER
         UNITED STATES DISTRICT JUDGE