Elaine T. Byszewski (SBN 222304)
Lee M. Gordon (SBN 174168)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Tel. (213) 330-7150
Fax (213) 330-7152
E-mail: elaine@hbsslaw.com

Robert B. Carey (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Tel. (602) 840-5900
Fax (602) 840-3012

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel. (206) 623-7292
Fax (206) 623-0594

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KEARNEY, NANCY KEARNEY, CHARLES MOORE, and SHARI MOORE,<br><br>                              Plaintiffs,<br><br>     v.<br><br>HYUNDAI  MOTOR AMERICA,<br><br>                              Defendant. | No. SACV09-01298 JST (MLGx)<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD PAYMENTS**<br><br>**CLASS ACTION**<br><br>**Date:   June 7, 2013**<br>**Time:  2:30 p.m.**<br>**Judge: Hon. Josephine Staton Tucker**<br>**Courtroom: 10A** |

Case No.: SACV09-01298 JST (MLGx)

010137-11  477164 V1

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

# **TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION .................................................................................... 1

II.    HISTORY OF LITIGATION ................................................................. 4

     A.    Plaintiffs' Investigations ............................................................ 4

         1.     Plaintiffs Christopher and Nancy Kearney ....................... 4

         2.     Plaintiffs Charles and Shari Moore ................................. 5

         3.     Class Counsel's Investigation .......................................... 6

     B.    The Defective Class of Vehicles ................................................ 7

     C.    The August 15, 2012 Settlement ................................................ 8

III.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT HMA AGREED TO PAY ................................. 11

     A.    Applicable Legal Standards ...................................................... 11

     B.    Under the Lodestar Method, Class Counsels' Attorneys' Fee Request Is Reasonable ......................................................... 12

         1.     Class Counsel's Hourly Rates Are Reasonable ............... 12

         2.     The Number of Hours that Class Counsel Worked Is Reasonable .................................................................... 14

         3.     Class Counsel's Fees are Reasonable Pursuant to the *Kerr* Factors Subsumed in the Lodestar Analysis ................................. 17

                (a)    Novelty and Complexity of the Litigation ............... 17

                (b)    Skill and Experience of Class Counsel and Quality of Representation ......................................... 18

                (c)    Class Counsel Obtained a Favorable Result for the Settlement Class ............................................. 19

                (d)    The Contingent Nature of the Litigation .................. 20

         4.     The  Factors Not Subsumed in the Lodestar Analysis Support Any Multiplier Needed to Approve this Fee Request .......................................................................... 21

C.   Class Counsel Seeks Reimbursement of Litigation Costs and Expenses Not to Exceed $58,000.00...........................................22

D.   The Class Representatives Should Each Receive $2,500 Incentive Award Payments ..................................................................23

E.   Negotiated Attorneys' Fee Agreements Are Favored in Class Action Settlements ...................................................................24

IV.   CONCLUSION ...................................................................25

Case No.: SACV09-01298 JST (MLGx)                    MEMORANDUM IN SUPPORT OF MOTION
FOR
                                                     AN AWARD OF ATTORNEYS' FEES, ET AL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Blum v. Stenson*, 465 U.S. 886 (1984).................................................................................12

*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir.2008) ......................12

*Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014 (9th Cir. 2000)..........................11

*Common Cause v. Jones*, 235 F. Supp. 2d 1076 (C.D. Cal. 2002) ......................17, 22

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal.
    App. 4th 387, 25 Cal. Rptr. 3d 514 (2005)................................................................19

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481 (9th Cir. 1988).........................21

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001)..............................12

*Finkel v. Am. Oil & Gas, Inc.*, No. 10-cv-01808-CMA-MEH, 2012 WL
    171038 (D. Colo. Jan. 20, 2012)................................................................................2

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) ....................................19

*Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577 (9th Cir. 2010)...............22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...............................3, 11, 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .........................................................12, 24

*Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320738
    (C.D. Cal. Nov. 1, 2005)............................................................................................13

*In re Cont'l Ill. Secs. Litig.*, 962 F.2d 566 (7th Cir. 1992).....................................25, 24

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D.
    Cal. June 10, 2005).....................................................................................................18

*In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747,
    1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990).......................................24

*In re Omnivision Technologies, Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................18, 22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ....................................................................................................... 11

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .......................... 24

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976) ................................................................................. 12, 17

*Marsikyan v. Mercedes-Benz USA, LLC*, No. 08-cv-04876, Order Granting Mot. Att'ys' Fees, May 17, 2010 (C.D. Cal.) (Exhibit 3) ........................ 17

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989) ....................................... 22

*Montoya v. Creditors Interchange Receivable Mgmt., LLC*, No. CV 10-3037 PSG (Ex), 2011 WL 2437474 (C.D. Cal. June 17, 2011) ......................... 20

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996), *reh'g denied*, *amended on other grounds by* 108 F.3d 981 (9th Cir. 1997) .............. 12, 17, 21

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........ 14, 17

*People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996) ....................................................................................... 13

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662 (2010) ............. 12, 13

*Pierce v. County of Orange*, No. SACV 01-981 ............................................. 13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................ 23

*Roy v. Hyundai Motor America*, No. 05-cv-483, Order Granting Mot. Att'ys' Fees, Apr. 10, 2006 (C.D. Cal.) (Exhibit 4) ............................................. 18

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ........................................................................................... 24

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .......................................................................................................... 13

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ........ 3, 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................... 3

*Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ............................................................................... 23

1

Other Authorities

2

*2012 Law Firm Billing Survey*, National Law Journal, Dec. 17, 2012,
http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202581351631 (last
visited Apr. 12, 2013) ........................................................................................ 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: SACV09-01298 JST (MLGx)

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

1
2
3
4
5
6

Plaintiffs Christopher Kearney, Nancy Kearney, Charles Moore, and Shari Moore ("Plaintiffs" or "Class Representatives"), by and through Class Counsel, respectfully submit this memorandum in support of their motion for an award of attorneys' fees, expenses, and incentive award payments for their hard work and skill in this litigation and securing a favorable result on behalf of the Settlement Class.[1]

## I.   <u>INTRODUCTION</u>

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Class Counsel believe that they have achieved an excellent result for the Class of current owners and lessees of certain model-year Hyundai Sonata, Santa Fe, and Azera vehicles (the "Class Vehicles"), in which the front-passenger-side Occupant Classification System ("OCS") is alleged to be defective by not consistently recognizing small-statured adults, causing deactivation of the passenger-side air bag when such persons occupied the front passenger seat.  The Settlement Agreement led to an additional 265,000 Class Vehicles being eligible for an updated calibration,[2] as well as a possible refund of the vehicle purchase price or exchange of the vehicle. According to Hyundai Motor America ("HMA"), the estimated value of the Santa Fe recall alone, just for labor, is approximately $2.5 million to date.[3]  This amount does not include the cost HMA incurred in developing the calibration software, the Sonata

23
24
25
26
27
28

[1] All capitalized terms shall have the same meanings set forth in the August 15, 2012 Settlement Agreement attached hereto as Exhibit 1.

[2] The prior recall campaign issued by HMA only included 2006-2008 Sonatas. Based on the parties' settlement negotiations, HMA voluntarily launched a recall in 2012 to make the Santa Fe OCS calibration available to each owner of a model year 2007-2009 Hyundai Santa Fe vehicle produced from April 19, 2006, to July 7, 2008.

[3] *See* Declaration of Robert B. Carey in Support of Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award Payments ("Carey Decl.") ¶ 2, attached hereto as Exhibit 2.

- 1 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

recalibration work, or the other benefits under the Settlement.  (Carey Decl. ¶ 3.)

Additionally, 646,734 Class Members were sent notice of the settlement by HMA,[4]

which educated them about a potential safety issue that might be not obvious—that

there was an issue with the proper functioning of the OCS, not merely with the air-

bag indicator light.[5]  At $0.46 per notice, this cost, paid for by HMA, is $297,497.64.

A conservative estimate would be: (1) the cost HMA incurred in developing the

calibration software is $1 million, (2) 500 Class Members participate in the

buyback/exchange program at about $2,000 per person, and (3) 100 Class Members

utilize the arbitration option at approximately $1,500 per arbitration, that constitutes

another $2,150,000 worth of value to the Class.  This indicates that the total cash

value of the Settlement could exceed $4.9 million.  (Carey Decl. ¶ 2.)

     After the Settlement Agreement was signed, the parties engaged the Honorable

Stephen J. Sundvold (Ret.) to mediate an award of attorneys' fees and expenses for

Class Counsel.  (*Id*. ¶ 3.)  Notably, Sections 9.1 and 9.2 of the Settlement Agreement

directed that the amount of Plaintiffs' reasonable attorneys' fees and expenses,

including reasonable incentive awards for Class Representatives, be negotiated and

agreed upon separately by the parties, "only after reaching agreement on all other

material terms of this settlement."  (*See* Exhibit 1, §§ 9.1, 9.2.)  The parties

---

[4] *See Finkel v. Am. Oil & Gas, Inc.*, No. 10-cv-01808-CMA-MEH, 2012 WL 171038, at *2 (D. Colo. Jan. 20, 2012) ("Attorneys' fees may be awarded following class-action settlements where a non-monetary benefit is conferred on the class.").

[5] *See* Exhibit 2 to the parties' Joint Motion for Final Approval of Class Settlement (Declaration of Jason R. Erb ¶ 3).

      MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

submitted confidential mediation statements to Judge Sundvold, and Class Counsel's submission included exhibits of their billing statement reflecting details of the work performed and their then-current lodestar and expenses and a discussion of the post-settlement efforts that would be required. (Carey Decl. ¶ 3.) The parties then participated in a mediation session in Orange, California, on August 28, 2012. (*Id.*) After vigorously mediating, the parties could not reach agreement. Judge Sundvold then made a "mediator's recommendation," and after additional discussion between the parties, HMA agreed to pay Class Counsel a total of $993,000.00 in attorneys' fees and expenses.[6] (*Id.*)

The agreed-upon award of $993,000 represents Class Counsel's expected lodestar totals $922,605.00, a figure that includes case-completion obligations, $45,855.71 in expenses incurred, and expected future expenses of $12,000. (Carey Decl. ¶¶ 4-7.) Though the parties' good-faith estimate of the finish-line lodestar should result in no multiplier, in the event the final lodestar is less than projected, the negotiated attorneys' fees is still well within the 3-4 multiplier commonly awarded in the Ninth Circuit and the Central District of California. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). The $993,000 award is fair to reward Class Counsel for their hard work and success in achieving a great result for the Class.

---

[6] This Court may give considerable weight to the mediation recommendation in determining whether the fee award is reasonable. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Finally, HMA agreed to pay $2,500 to each of the four Class Representatives, Christopher Kearney, Nancy Kearney, Charles Moore, and Shari Moore, as an incentive award for their time and effort in the Litigation.  (Carey Decl. ¶ 3.)  The Class Representatives have been available for multiple conferences, provided information for their disclosures and other pleadings, and Plaintiff Nancy Kearney gathered information from other Hyundai owners to demonstrate that the OCS defect was a common issue that was affecting a large number of people.  (*Id.* ¶ 8.)  As with Class Counsel's fees and expenses, these incentive awards were negotiated separately from and after the material terms of the Settlement, and they will not affect the amount of relief available to the Settlement Class.  (*See* Exhibit 1, § 9.2.)

For the reasons set forth herein, Plaintiffs respectfully submit that their requested award of $993,000 for attorneys' fees and expenses, and $2,500 incentive award payments, is reasonable under Ninth Circuit case law and should be fully awarded by this Court pursuant to the parties' agreement.

## II.    HISTORY OF LITIGATION

### A.    Plaintiffs' Investigations

#### 1.    Plaintiffs Christopher and Nancy Kearney[7]

Plaintiffs Christopher and Nancy Kearney purchased a 2006 Hyundai Sonata with an OCS, and they noticed that when Plaintiff Nancy Kearney (who is 5'7" and

---

[7] *See generally* Declaration of Christopher and Nancy Kearney in Support of Supplemental Brief regarding Certification of Settlement Class ("Kearneys' Decl."), Dkt. 82.

weighs 115 pounds) sat in the front passenger seat, the PASSENGER AIR BAG

OFF lamp on the dashboard indicates that the passenger front air bag is deactivated.

Plaintiff Christopher Kearney took their Sonata into their local Hyundai dealer

multiple times regarding the issue.  The first time they were in for service, the dealer

saw that the light came on when a 190-pound person sat in the passenger seat, so the

dealer removed the passenger seat cushion and sent it to an evaluation and repair

facility in California.

The Kearneys still found that the OCS was shutting off the passenger-side air

bag when Nancy Kearney sat in the passenger seat.  The dealer said "a new car" was

the fix, but the dealer and HMA did not take the car back.  Nancy Kearney called

Hyundai USA in July 2009 about the problem and only then did she learn there had

been a recall involving the Sonata's OCS.

### 2.      Plaintiffs Charles and Shari Moore[8]

Plaintiffs Charles and Shari Moore purchased a 2008 Hyundai Santa Fe with

OCS and advanced air bags.  Their daughter, Melissa Merriman, is 5'7" and weighs

approximately 117 pounds.  On December 26, 2008, Plaintiff Shari Moore was

driving in the Santa Fe with Melissa sitting in the front passenger seat when they

were hit by a drunk driver in a head-on collision.  Shari's air bag deployed, but

Melissa's did not.  Melissa's head went through the windshield, and she suffered

serious injuries.  The Santa Fe was totaled, but since it was only weeks old at the

time of the accident, the Moores obtained another 2008 Hyundai Santa Fe.  The

Moores have observed that the PASSENGER AIR BAG OFF lamp illuminates when

---

[8] *See generally* Declaration of Charles and Shari Moore in Support of
Supplemental Brief regarding Certification of Settlement Class ("Moores' Decl."),
Dkt. 83.

Case No.: SACV09-01298 JST (MLGx)                    MEMORANDUM IN SUPPORT OF MOTION FOR
                                                     AN AWARD OF ATTORNEYS' FEES, ET AL.

their daughter or another small-stature adult sits in the front passenger seat even in their replacement 2008 Hyundai Santa Fe.

### 3.    Class Counsel's Investigation

In approximately July 2009, Plaintiffs Christopher and Nancy Kearney requested that Class Counsel investigate the possible OCS defect in Sonatas.  (Carey Decl. ¶ 9.)  Class Counsel undertook an intensive investigation and discovered Hyundai's OCS did not accurately determine whether the front-passenger-seat occupant is a small-statured adult and based on its inaccurate determination, the OCS deactivated the air bag.  (*Id.* ¶ 10.)  Hyundai owners would not be aware of even the existence of this defect until they had a small-statured adult as a front-seat passenger.  (*Id.*)  But HMA was aware of this defect—it notified the National Highway Traffic Safety Administration ("NHTSA") of its voluntary recall on April 1, 2008, for 2006-2008 Sonatas produced from March 1, 2005, to January 11, 2008, to recalibrate the OCS in those vehicles.

Class Counsel discovered that many owners of various Hyundai models complained on Internet forums and filed complaints with NHTSA related to the OCS misclassification issue.  (*Id.*)  The nature of the complaints indicated that the defect included various Hyundai models equipped with OCS, yet HMA failed to disclose the defect, and its recall did not resolve the OCS issue.  (*Id.*)  Therefore, on November 6, 2009, Class Counsel filed this action on behalf of Plaintiffs Christopher and Nancy Kearney and a putative class in the United States District Court for the Central District of California, asserting that HMA and Hyundai Motor Company ("HMC") defectively designed the OCS of 2006-2009 model-year Hyundai vehicles,

- 6 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

leading the OCS to inconsistently recognize small-stature adults by illuminating the "PASSENGER AIR BAG OFF" light.[9]  (*See* Complaint, Dkt. 1.)

### B.      The Defective Class of Vehicles

According to NHTSA's Office of Defects Investigation ("ODI"), the recall for 393,308 model year 2006-2008 Sonatas equipped with OCS was reported on April 10, 2008.  The recall stated "the misclassification of a small stature adult as a child in the right front passenger seat may cause the right front air bag to not inflate in an accident that merits air bag deployment and may result in injury to the right front occupant."  The remedy under the recall was that Hyundai dealers would verify that the OCS did not accurately recognize a properly seated adult occupant, and they would ship the right front seat cushion assembly to an evaluation and repair facility for evaluation, repair, and/or reprogramming of the seat and OCS as necessary.

But the defect extended to other Hyundai models that contained OCS.  By reviewing information from NHTSA and data from HMA, Class Counsel determined the Hyundai vehicles that manifested an aberrant rate of OCS-classification incidents using objective factors.  (*Id.* ¶ 11.)  These vehicles include the following:

- ▪ Model Years 2006 through 2008 Hyundai Sonata vehicles;[10]

- ▪ Model Years 2007 through 2009 Hyundai Santa Fe vehicles produced from April 19, 2006 through July 7, 2008;[11] and

---

[9] Plaintiffs Charles and Shari Moore contacted Class Counsel in December 2009 about their accident in which their 2008 Santa Fe's front passenger-side air bag did not deploy despite their adult daughter being seated there. (Carey Decl. ¶ 9.)  They were added as Class Representatives in the First Amended Complaint ("FAC"), filed on January 8, 2010.  (Dkt. 11.)  HMC was removed as a Defendant in the FAC.  (*Id.*)

[10] The Sonata vehicle population is approximately 395,000, and the complaint rate was a relatively high 0.041% (approximately 161 complaints).  (Carey Decl. ¶ 11.)

MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, ET AL.

- ▪ Model year 2006 through 2009 Hyundai Azera vehicles.[12]

These vehicles contain an OCS with either a MAT or a PODS system type, but regardless of the system type, the OCS experiences the same deficiency—the nonrecognition of small-stature adults.  (*Id.* ¶ 12.)  Class Counsel discovered that the other Hyundai models had levels of misclassification that were substantially lower, so those vehicles were not pursued.  (*Id.*)

## C.    The August 15, 2012 Settlement

After surviving HMA's second motion to dismiss, Class Counsel negotiated the proposed settlement to expand the number of owners or lessees who would be eligible for the recalibration of the OCS and the scope of the benefits to Class Members.  (*Id.* at 13; Exhibit 1, § 3.)  Based on Class Counsel's suit, HMA agreed to provide the updated OCS calibration on Santa Fes as one of the settlement benefits, and 2006-2009 Azeras were added as Class Vehicles.  (Carey Decl. ¶ 13.)  The Settlement also provides all Class Members with a potential buyback or exchange program if they remain unhappy with the OCS's performance and meet certain eligibility requirements, and the opportunity to arbitrate their eligibility in the program if HMA refuses to refund their purchase price.  (*See* Exhibit 1, §§ 4-5.)

This additional eligibility for benefits under the proposed Settlement applies in several circumstances and vastly expands the number of consumers (by roughly 265,000) to whom this relief is available:

| Hyundai Vehicle | Recall | Class Settlement Improvements |
|---|---|---|

---

[11] The Santa Fe vehicle population is approximately 199,000, and the complaint rate was 0.024% (approximately 67 complaints).  (*Id.*)

[12] The Azera vehicle population is approximately 66,000, and the complaint rate was 0.012% (approximately 8 complaints).  (*Id.*)

- 8 -

| | | |
|---|---|---|
| 2006-2008 Sonatas | 2008 recall: Dealers will verify that the OCS does not properly recognize a properly seated adult occupant. After verification, dealers will remove the right front seat cushion assembly and ship it to an evaluation and repair facility. This facility will evaluate and repair or reprogram the seat cushion and OCS as necessary. | Class Members will receive recalibration of the OCS performed free of charge pursuant to the recall (if not already performed); **and**<br><br>HMA will mail Class Members a sticker for the glove compartment door (or the Owner's Manual) advising future owners that the OCS has been recalibrated and an explanatory cover letter; **and**<br><br>HMA will update the TSB associated with the recall to reflect that authorized Hyundai dealers performing the OCS recalibration should apply a sticker to the inside of the glove compartment door (or the Owner's Manual) advising future owners that the OCS has been recalibrated; **and**<br><br>HMA will mail Class Members a pamphlet that provides information about the OCS and its operation. |
| 2007-2009 Santa Fes produced April 19, 2006 through July 7, 2008 | 2012 recall: Hyundai will notify owners, and dealers will update the classification software free of charge. | Prior to initiating the 2012 recall, HMA agreed to provide the updated OCS calibration as one of the settlement benefits.<br><br>Class Members will receive updated calibration of the OCS performed free of charge pursuant to the recall (if not already performed); **and**<br><br>HMA will mail Class Members a pamphlet that provides information about the OCS and its operation. |
| 2006-2009 Azeras | No recall issued; no fix available for OCS | HMA will mail Class Members a pamphlet that provides information |

- 9 -

| | | about the OCS and its operation. |
|---|---|---|
| All Class Vehicles if Class Members remain unsatisfied with performance of OCS | N/A | Class Members may be eligible for a potential repurchase or vehicles exchange program if certain requirements are met and subject to certain conditions; **and** |
| | | If a Class Member receives a refund offer from HMA and sells the vehicle in an arms-length transaction at a price greater than the refund price offered by HMA within 60 days and submit supporting documentation, HMA will pay the Class Member $500; **and** |
| | | If a Class Member is still unsatisfied with the OCS and HMA is unwilling to refund the vehicle's purchase price, the Class Member may initiate an arbitration by the Better Business Bureau or a similar entity within 30 days after the 90-day period HMA had to resolve the Class Member's concerns; **and** |
| | | If the arbitrator agrees that the Class Member has satisfied the Refund/Exchange Conditions, HMA will refund the purchase price of the Class Member's vehicle (or exchange it for another Hyundai model) subject to certain conditions, and HMA will bear the expense of the arbitration. |

(*See* Exhibit 1, §§ 3-5.)

First, the eligibility for Settlement benefits extends to owners of certain model year Santa Fe and Azera vehicles—not just Sonatas.  Second, the recall on the OCS in Santa Fe vehicles was a direct result of settlement negotiations, and the updated calibration of the OCS would have been a benefit offered under the Settlement Agreement had HMA not voluntarily issued the recall.  Third, all Class Members, regardless of what type of Class Vehicle they own, may be eligible for a possible refund of their vehicle's purchase price or an exchange of their vehicle for another Hyundai vehicle if they meet the eligibility requirements.  Another significant benefit offered to Class Members under the Settlement is the opportunity to pursue arbitration if the Class Member is denied eligibility in the repurchase program.  Finally, Class Counsel's position is that the Class notice also constitutes a value to Class members because it warns of a potential safety hazard.

## III.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT HMA AGREED TO PAY

### A.   Applicable Legal Standards

The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys fees, depending on the case."  *Hanlon*, 150 F.3d at 1029.  The district court has discretion to use either the percentage or lodestar method in common-fund cases, where benefits are distributed to class members from a large settlement fund.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 (9th Cir. 1994).  But in cases that do not involve common-fund settlements, "[t]his circuit requires a district court to calculate an award of attorneys' fees by first calculating the 'lodestar.'"  *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

The lodestar method yields a fee that is presumptively reasonable.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1672-73 (2010).  The first step in the lodestar method is to take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar may be adjusted up or down to account for other factors[13] which are not subsumed within it.[14]  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Here, the Court should use the lodestar method, and, if necessary, apply a multiplier to award the amount HMA agreed to pay.

## B.   Under the Lodestar Method, Class Counsels' Attorneys' Fee Request Is Reasonable

### 1.   Class Counsel's Hourly Rates Are Reasonable

Under the lodestar method, reasonable hourly rates are determined by "prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  These rates are in line with those commanded by lawyers of reasonably comparable skill, experience, and reputation.  *Id*. at 895 n.11.  "The relevant community is the forum in which the district court sits."  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir.2008).

---

[13] The factors include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

[14] The factors already taken into account by the lodestar calculation are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation,...(4) the results obtained, and (5) the contingent nature of the fee agreement."  *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996), *reh'g denied, amended on other grounds by* 108 F.3d 981 (9th Cir. 1997) (internal citations omitted).

Affidavits of the plaintiffs' attorney regarding prevailing fees in the community and rate determinations in other cases "are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The district court may consider evidence of counsel's customary hourly rate. *See People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (holding that an attorney's actual billing rate for similar work is presumptively appropriate).

Here, the hourly rates submitted by Class Counsel reflect their actual billing rates. (Carey Decl. ¶ 4.) Class Counsel are members of the bar with extensive experience in prosecuting complex litigation, including consumer class actions. (*Id.* at ¶ 1.) HMA is represented by well-respected national law firm, necessitating a high level of experience for success. Class Counsel's rates are appropriate for complex, nationwide litigation, with a range of $325 to $800; their legal assistants' rates range from $150 to $190. (*Id.* ¶ 4.)

Moreover, Class Counsel's hourly rates are comparable to those approved in this District, which range from $450-1,000 for attorneys and $160-250 for paralegals/law clerks. *See, e.g., Pierce v. County of Orange*, No. SACV 01-981 ABC (MLGx), 2012 WL 5906663, at *13-14 (C.D. Cal. Mar. 2, 2012); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320738, at *2 (C.D. Cal. Nov. 1, 2005).

Additionally, the National Law Journal ("NLJ") issues an annual survey of prevailing hourly rates in the nation's largest law firms, and courts rely on this survey as evidence of prevailing hourly rates. *See, e.g., Perdue*, 559 U.S. 542, 130

- 13 -

MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, ET AL.

S. Ct. at 1683 (Breyer, J., concurring in part, dissenting in part); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).  According to the NLJ's 2012 Law Firm Billing Survey, Class Counsel's rates are comparable to the rates of California law firms, including HMA's counsel, Hogan Lovells.[15]

Finally, Plaintiffs submit a sworn declaration by their counsel, attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case.  (Carey Decl. ¶¶ 1, 3-4, 10-19.)  Class Counsel's rates are reasonable, and when multiplied by the number of hours expended by Class Counsel, the result is a reasonable estimated lodestar of $992,605.00.  (*Id.* ¶ 4.)

**2.     The Number of Hours that Class Counsel Worked Is Reasonable**

The number of hours worked by Class Counsel to date and the estimated time to conclude the Litigation is reasonable.  Class Counsel's cumulative lodestar through April 25, 2013, is $665,605.00, which consists of 1,550 hours expended. (*Id.* ¶ 4.)  Final Approval, however, is scheduled for June 7, 2013, and Class Counsel estimates they will need to be prepared to perform, at most, approximately 290 additional hours to respond to Class Members' inquiries and objections, submit declarations from Class Members discussing their reactions to the proposed settlement, and file a brief in response to any objections by Class Members that also summarizes the administration of the Settlement to bring the Settlement before the Court for final approval.  (*Id.* ¶ 16.)  Class Counsel estimates an additional 580 hours as the top-of-range estimate of the hours necessary to attend to the issues that will

---

[15] *See The 2012 Law Firm Billing Survey*, NATIONAL LAW JOURNAL, Dec. 17, 2012, http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202581351631 (last visited Apr. 12, 2013) (stating Hogan Lovells' hourly rates are $545-1,200 for partners and $310-655 for associates).

- 14 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

arise during administration of the Settlement, field inquiries from Class Members

regarding the Settlement, and walk Class Members through the buyback/exchange

and arbitration processes to conclude the Litigation.  (*Id*.)  Thus, Class Counsel

estimates that their total hours will eventually be close to 2,420 for a total cumulative

lodestar of at least $922,605.00.  (*Id*. ¶ 4.)

Class Counsel expended significant time investigating the factual basis for the

claims before drafting and filing the initial Complaint in the United States District

Court, Central District of California, on November 6, 2009.  Throughout the FAC,

the Second Amended Complaint ("SAC") (Dkt. 30), and the two rounds of full

briefing on motions to dismiss Class Counsel vigorously opposed HMA's arguments.

(Carey Decl. ¶¶ 14-15.)  Once the parties agreed to attempt to resolve the Litigation,

Class Counsel worked for several months and had multiple meetings with HMA to

negotiate the terms of the settlement at arms' length, drafted the Settlement

Agreement and Class Notice, together with preparing the proposed preliminary and

final approval orders, and the preliminary approval and settlement Class motions and

memoranda.  (*Id*. ¶ 15.)

Class Counsel will also have to expend significant time leading up to the final

approval hearing and after the Settlement is approved and implemented.  In another

similar case between Class Counsel and HMA regarding subframe corrosion of

certain Hyundai vehicles,[16] Class Counsel has expended approximately 100 post-

settlement-approval hours dealing with various class member issues—this

represented roughly a 3% response rate from the class members.  (Carey Decl. ¶ 17.)

---

[16] *See Cirulli v. Hyundai Motor America*, United States District Court for the
Central District of California (No. SACV08-00854 AG (MLGx)).

- 15 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

To date, Class Counsel has received almost three times the inquiries regarding this Settlement than it did for the *Cirulli* settlement.  (*Id.*)  The *Cirulli* settlement offered a very limited buyback remedy if the subframe repairs exceeded the fair-market value of the vehicle.  (*Id.*)  Only a few class members partook of that remedy, and achieving resolution through communication and exchange of documents with those class members and counsel for HMA took several hours for each person.  (*Id.*)  This Settlement involves an alleged defect in the Class Vehicles' OCS—a safety issue that is an important concern for most vehicle owners and lessees—and the Settlement itself is more complex as it involves a much broader vehicle buyback/exchange program as well as an arbitration option.  (*Id.*)  For example, if a Class Member contacts Class Counsel about participating in the buyback/exchange program, Class Counsel will have to walk the Class Member through the program's eligibility requirements, ensure that they have had the recalibration recall performed (for Sonatas and Santa Fes), and communicate with the Class Member and HMA's counsel going forward to resolve the issue.  (*Id.*)  If the Class Member then wants to pursue arbitration, Class Counsel will again need to communicate and coordinate with the Class Member and HMA's counsel to arrange and complete the arbitration.  (*Id.*)  Therefore, Class Counsel believes that there will be a high rate of Class-Member inquiries and participation in the buyback/exchange program, and over three times as much time as in *Cirulli* spent by Class Counsel on each inquiry.  (*Id.*)  Based on the briefing that will take place before Final Approval, as well as the post-Settlement issues that are sure to arise, Class Counsel estimates it will expend 870 hours to complete this Litigation.  (*Id.* ¶¶ 4, 16.)

- 16 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

This estimate is in line with the final lodestars in similar cases in this District. *See, e.g., Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1078-79 (C.D. Cal. 2002) (3,345.8 attorney and staff hours generating a $971,578.50 lodestar); *Marsikyan v. Mercedes-Benz USA, LLC*, No. 08-cv-04876, Order Granting Mot. Att'ys' Fees, May 17, 2010 (C.D. Cal.) (2,900 hours generating a $1,227,484 lodestar) (Exhibit 3); *Parkinson*, 796 F. Supp. 2d at 1173 (8,771 hours over four years of litigation generating final lodestar calculation of $3,719,282.30).  The hours that Class Counsel devoted to this case were reasonable and necessary—Class Counsel has furthered the Litigation and adequately represent the interests of the Class in the hard-fought settlement negotiations with HMA.

If the Court opts to award a multiplier instead of Class Counsel's expected final lodestar, that multiplier would likely be no more than 1.1, which is well below the multipliers commonly approved in this Circuit for similar cases.

### 3. Class Counsel's Fees are Reasonable Pursuant to the *Kerr* Factors Subsumed in the Lodestar Analysis

In considering the reasonableness of attorneys' fees and any requested multiplier, courts consider the novelty and complexity of the litigation, counsel's skill and experience, the quality of representation, the results obtained, and the contingent nature of the fee agreement.  *See Morales*, 96 F.3d at 364.

### (a) Novelty and Complexity of the Litigation

The Complaint filed by Plaintiffs and Class Counsel on November 6, 2009, was the first lawsuit specifically regarding the OCS issue in Hyundai vehicles other

Case No.: SACV09-01298 JST (MLGx)

MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, ET AL.

than just the Elantra.[17]  The recall Hyundai issues for 2006-2008 Sonatas did not

encompass any other Hyundai models that contained OCS, nor did it fix the OCS

problem in the Sonatas.

Even though it acknowledged limitations in the OCS's design, HMA sought

dismissal of the Litigation on a variety of grounds prompting the briefing of

multiple, complex issues over two separate motions to dismiss.  Class Counsel

contested each of HMA's challenges and ultimately won relief for a vastly expanded

Class of consumers throughout the United States.

**(b)     Skill and Experience of Class Counsel and Quality of Representation**

The "prosecution and management of a complex national class action requires

unique legal skills and abilities."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT,

2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005).  The courts consider counsel's

skill alongside the quality of work performed by counsel.  *See In re Omnivision*

*Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

In this case, success required experienced and skilled class-action attorneys.

Class Counsel are members of the bar with vast experience in consumer class-action

litigation, which they utilized to obtain the best recovery for the Class.  (Carey Decl.

¶¶ 1, 14.)  This case is factually complex and involved numerous legal questions

involving the scope of federal vehicle-safety regulations, standing issues for

---

[17] In *Roy v. Hyundai Motor America*, No. 05-cv-483, Order Granting Mot. Att'ys' Fees, Apr. 10, 2006 (C.D. Cal.), the plaintiff sued Hyundai on behalf of a class of 2004-2006 Hyundai Elantra owners and lessees who were experiencing the OCS issue in their vehicles.  The subsequent settlement was granted final approval, and the Court awarded attorneys' fees and expenses in the amount of $1.2 million (representing a $618,391 lodestar with a 1.9 multiplier, and $28,475 in costs).  (*See* Exhibit 4.)

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

California consumer claims, and arguments regarding the applicability of warranty claims. Yet Class Counsel defeated HMA's second motion to dismiss its SAC and negotiated a beneficial settlement for the Class.

The Court should consider the quality of opposing counsel in evaluating the quality of Class Counsel's work. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20. Class Counsel faced Hogan & Lovells—a highly skilled law firm with a well-deserved reputation for vigorous advocacy in the defense of its clients. *See id.*

### (c)    Class Counsel Obtained a Favorable Result for the Settlement Class

Class Counsel negotiated a favorable settlement for a large Class while addressing a fundamental safety-related defect. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 578 (2004). The substantial benefit doctrine applies when "a concrete and significant benefit, although nonmonetary in nature, has nonetheless been conferred on an ascertainable class." *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387, 397, 25 Cal. Rptr. 3d 514, 520 (2005)).

This settlement will confer both nonmonetary and monetary benefits on 660,000 Hyundai owners and lessees by the Settlement. The Settlement makes available (1) an OCS recalibration in most of the Class Vehicles (594,000 Sonatas and Santa Fes); (2) a sticker providing notification of the recalibration for those vehicles; (3) the potential vehicle buyback or exchange program to all Class Members; and (4) arbitration regarding eligibility in the buyback/exchange program. The Settlement notifies the Class of a possible safety concern and eliminates that concern by recalibrating Hyundai vehicles that suffer from OCS misclassification

1   issues or potentially permitting Class Members to rid themselves of Class Vehicles

2   that are still experiencing OCS issues.

3   The costs of the benefits provided to the Class demonstrate the value of the

4   Settlement.  Class Counsel was, in their opinion, primarily responsible for the recall

5   initiated on Santa Fes by HMA in 2012, and the labor cost alone to HMA for the

6   updated calibration on the OCS in Santa Fes is $29.76.[18]  (Carey Decl. ¶ 2.)  As of

7   January 23, 2013, the date of the most recent quarterly report HMA filed with

8   NHTSA, HMA had recalibrated 82,070 Santa Fes—that is nearly $2.5 million solely

9   in labor costs only for the Santa Fes.  (*Id*.)  This amount does not include HMA's

10  development cost of the calibration software, nor does it include the recalibration

11  costs of the Sonatas or the substantial costs that will be borne by HMA for those

12  Class Members who participate in the vehicle buyback/exchange program or

13  exercise the arbitration option.  (*Id*.)  These benefit costs would provide a "common

14  fund" of at least $4.9 million (*Id*.), making Class Counsel's request for $993,000 in

15  fees and expenses well within the Ninth Circuit's 25% benchmark for fees.  *See*

16  *Hanlon*, 150 F.3d at 1029.  This Settlement remediates the defect and provides

17  significant monetary and nonmonetary relief to members of the Class.

18          **(d)     The Contingent Nature of the Litigation**

19          In conducting an inquiry into whether counsel's hours were reasonably

20  expended in this litigation, the Court may consider the contingent nature of the fee

21  agreement.  *Montoya v. Creditors Interchange Receivable Mgmt., LLC*, No. CV 10-

22  3037 PSG (Ex), 2011 WL 2437474, at *2 (C.D. Cal. June 17, 2011).  Class Counsel

---

[18] The cost of the OCS recalibration of one Sonata is $199.52.  (Carey Decl. ¶ 2.)

- 20 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

pursued this case on a contingency basis.  (Carey Decl. ¶ 18.)  Class Counsel have

expended many hours working on this case and born all expenses and risks of the

litigation—the Class Representatives and Class Members are not responsible for any

fees or costs.  (*Id*.)  The contingent nature of this litigation supports the

reasonableness of the hours expended by Class Counsel.

### 4.     The  Factors Not Subsumed in the Lodestar Analysis Support Any Multiplier Needed to Approve this Fee Request

The factors that are not subsumed in the lodestar analysis may support a

multiplier.  *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).

These factors include the time and labor required, the preclusion of other

employment by the attorney due to acceptance of the case, the customary fee, time

limitations imposed by the client or the circumstances, the nature and length of the

professional relationship with the client, and awards in similar cases.  *See Morales*,

96 F.3d at 363 n.8, 364 n.9.  These factors weigh in favor of any multiplier necessary

to award Class Counsel the agreed-upon fee amount.

The time and labor required to bring this Litigation to a reasonable settlement

was substantial.  Class Counsel have expended 1,550 hours during the course of the

suit and the months-long settlement negotiations.  (Carey Decl. ¶¶ 4, 18.)  As a result

of Class Counsel's perseverance in bringing the defect to light and seeking relief for

all purchasers of Hyundai models with the OCS defect, the type and availability of

relief was vastly expanded to consumers throughout the United States.

The work involved in successfully litigating this action over several years

caused Class Counsel to forego the pursuit of other employment.  (Carey Decl.  ¶

19.)  Class Counsel is a nationwide firm specializing in class actions, and it must

MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, ET AL.

allocate its resources carefully to investigate and initiate suits it believes are worthwhile.  (*Id.*)  This Litigation resulted in a significant expenditure of time and money—an expenditure that limited Class Counsel's pursuit of other cases.  (*Id*. ¶¶ 4, 7, 19.)

An award in the amount of Class Counsel's lodestar plus expected costs of completion, or alternatively, a fair multiplier of Class Counsel's lodestar, assuming the Court trims back the projected maximum, which also supports approval.  *Id*.  *See also supra* Parts III.A. and III.B.1.  Awards granted in similar cases demonstrate that Class Counsel's request for its estimated lodestar (or, if needed, a modest multiplier of the lodestar to grant the fee award).  *See Common Cause*, 235 F. Supp. 2d at 1081-82 (award of $1,063,087.29 for 3,345.8 hours); *Van Vranken*, 901 F. Supp. At 298 (3-4 is typical range for multipliers).  *See also supra* Parts I. and III.B.2.

### C.   Class Counsel Seeks Reimbursement of Litigation Costs and Expenses Not to Exceed $58,000.00

Class Counsel has incurred expenses in the amount of $45,855.71.  These expenses are detailed in Class Counsel's declarations submitted concurrently herewith.  (Carey Decl. ¶¶ 5-7.)  Class Counsel estimates that it will expend approximately $12,000.00 more in costs before the close of the Litigation.  (*Id*. ¶ 5.)

All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989); *accord Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  *See also Omnivision*, 559 F. Supp. 2d at 1048 ("[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in noncontingency matters").

- 22 -

MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, ET AL.

As detailed in the Declarations of Class Counsel, Plaintiffs incurred substantial costs on motions practice, travel, computer research, photocopies, postage, filing fees, and telephone charges.  (*Id.* ¶ 5.)  There were multiple settlement meetings—including the mediation—for which Class Counsel had to travel, and charges for computerized factual and legal research included online legal services such as LEXIS/Nexis.  (*Id.* ¶¶ 3, 5, 15.)  These costs were necessarily and reasonably incurred to bring this case to a successful outcome, and reflect market rates for the various categories of expenses incurred.

### D.     The Class Representatives Should Each Receive $2,500 Incentive Award Payments

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (*citing* 4 ALBA CONTE ET AL., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008).  These awards, generally sought after a settlement has been reached, "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59.  The Court has discretion to approve incentive awards and its consideration includes factors such as the amount of time and effort spent by the class representatives, the duration of the litigation, and the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation.  *Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP (OPx), 2008 WL 3854963, at *12 (C.D. Cal. Aug. 13, 2008).

The Class Representatives have devoted considerable time to this Litigation, including developing the claims and theories prior to filing suit.  Plaintiffs

Christopher and Nancy Kearney sought out Class Counsel and requested that they look into the OCS issue in their Sonata.  (Carey Decl. ¶ 9.)  Plaintiff Nancy Kearney also investigated the OCS defect and gathered information from other Hyundai owners.  (*Id*. ¶ 8.)  And Plaintiffs Charles and Shari Moore contacted Class Counsel to inform them of the accident involving their Santa Fe in which the OCS defect resulted in serious injury to their small-stature adult daughter.  (*Id*. ¶ 9.)  Notwithstanding this initial involvement, the Class Representatives assisted Class Counsel in gathering facts for this case, being available and responsive for multiple communications with Class Counsel, and reviewing pleadings and discovery.  (*Id*. ¶ 8.)  Furthermore, the awards are modest compared with incentive awards in other cases.  *See, e.g., Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *18-19 (S.D. Cal. June 1, 2010) ($25,000 award); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ($300,000 award).

Finally, HMA agreed to pay these incentive awards, separate and apart from the relief provided to the Settlement Class, and their payment will not reduce or otherwise impact any monetary or other benefit provided to the Settlement Class.

**E.    Negotiated Attorneys' Fee Agreements Are Favored in Class Action Settlements**

Federal courts encourage litigants to resolve fee issues by agreement whenever possible.  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."[19]

---

[19] *Hensley*, 461 U.S. at 437; *see also In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *4, 1990 U.S. Dist. LEXIS 15488, at *12 (S.D. Cal. Aug. 30, 1990) ("…the parties should be encouraged to settle all their disputes as part of the settlement…including the amount of the fee…[and] it should be approved as part of the negotiated settlement").

Case No.: SACV09-01298 JST (MLGx)                    MEMORANDUM IN SUPPORT OF MOTION FOR
                                                     AN AWARD OF ATTORNEYS' FEES, ET AL.

1    A fee negotiated by the parties at arm's-length is essentially a market-set price.

2    Defendants have an interest in minimizing the fee; plaintiffs have an interest in

3    maximizing it; and the negotiations are informed by the parties' knowledge of the

4    work done and result achieved, and their views on what the court might award if the

5    matter were litigated.  In *In re Cont'l Ill. Secs. Litig.*, Judge Posner endorsed a

6    market-based approach to evaluating fee requests, stating that the function of judges

7    in fee litigation "is to determine what the lawyer would receive if he were selling his

8    services in the market rather than being paid by court order."  *In re Cont'l Ill. Secs.*

9    *Litig.*, 962 F.2d 566, 568 (7th Cir. 1992).

10   Here, an arms'-length negotiation was conducted, and HMA agreed to a

11   payment of $993,000 in fees and costs and $2,500 to each of the four Class

12   Representatives.  (Carey Decl. ¶ 3.)  Moreover, an experienced mediator oversaw the

13   negotiations and the final terms of the Settlement, further demonstrating the

14   reasonableness of Plaintiffs' request.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award

their counsel $993,000 in attorneys' fees and expenses, and the Court award the

Class Representatives $2,500 each in incentive awards.

Respectfully submitted,

DATED: April 25, 2013              By:  /s/Robert B. Carey

                                   Robert B. Carey*
                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                   11 West Jefferson Street, Suite 1000
                                   Phoenix, AZ  85003
                                   Tel. (602) 840-5900

- 25 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

1

2

Fax (602) 840-3012
E-mail: rob@hbsslaw.com

3

Elaine T. Byszewski (SBN 222304)
Lee M. Gordon (SBN 174168)

4

HAGENS BERMAN SOBOL SHAPIRO LLP

5

301 North Lake Avenue, Suite 203
Pasadena, CA  91101

6

Tel. (213) 330-7150

7

Fax (213) 330-7152
E-mail: elaine@hbsslaw.com

8

9

Steve W. Berman*
HAGENS BERMAN SOBOL SHAPIRO LLP

10

1918 Eighth Avenue, Suite 3300

11

Seattle, WA  98101
Tel. (206) 623-7292

12

Fax (206) 623-0594
E-mail: steve@hbsslaw.com

13

14

*admitted pro hac vice*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -

MEMORANDUM IN SUPPORT OF MOTION FOR
AN AWARD OF ATTORNEYS' FEES, ET AL.

1

## __PROOF OF SERVICE__

2

3        I hereby certify that a true copy of the above document was served upon the
attorney of record for each other party through the Court's electronic filing service
on April 25, 2013.

4

5

6                                              /s/ Robert B. Carey
                                            Robert B. Carey

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28